# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| Lynn Seithel | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:11-cv-1854-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Feldman & Pinto, P.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court upon Defendant Feldman and Pinto, P.A.'s ("the P.A.") [1] Motion to Dismiss or, in the Alternative, to Transfer Venue. A hearing was held on September 1, 2011 at 10:30 a.m. For the reasons set forth herein, the Court denies Defendant's Motion to Dismiss, but orders that this case be transferred to the United States District Court for the Eastern District of Pennsylvania.

---

[1] The Defendant in this case is Feldman and Pinto, P.A. According to Defendants, Feldman & Pinto, a law firm named for from attorneys Laura Feldman and Rosemary Pinto, is comprised of two distinct entities, Feldman and Pinto P.A. and Feldman and Pinto P.C. ("the P.C."). Defendant claims that Plaintiff was employed by the P.C. and not the P.A. Thus, Defendant argues that Plaintiff's claims, even if valid, could only be asserted against the P.C. Plaintiff claims that there is confusion as to whether she was employed by the P.A. or the P.C. and has informed the Court that she intends to make a motion for leave to amend the complaint to include all Feldman and Pinto entities. Laura Feldman explains the confusion:

> . . . there is an entity called Feldman & Pinto LLC which operates out of West Chester, Pennsylvania, and does business as Feldman & Pinto P.A. Feldman & Pinto, P.A. was originally incorporated in New Jersey, not Pennsylvania, as I mistakenly said earlier. That is the reason why the name Feldman & Pinto P.A. does not appear on the Pennsylvania Corporation Bureau records. Exhibit 1 hereto is a true and correct page from the New Jersey corporation bureau website reflecting that fact. Exhibit 2 hereto is a Feldman & Pinto P.A. bank statement from the period of Ms. Seithel's employment, reflecting its West Chester address and separate account. This has been a source of confusion for me, and we are in the process of rectifying it.

Supplemental Aff. of Laura Feldman in Supp. of Mot. to Dismiss or Transfer at ¶ 14. Clearly there is real confusion surrounding the business structure used by Feldman & Pinto, LLC, P.A., and P.C. For purposes of this order, the Court uses "the firm" or "Defendant" to refers to any and all of these entities.

1

## BACKGROUND

Plaintiff was working for Motley Rice, LLC ("Motley Rice") when she became acquainted with Laura Feldman, Rosemary Pinto, and the firm. Defendant hired Plaintiff in or about January 2010, but terminated her services in June 2011. This case involves her dismissal and the actions of the parties since that time.

In addition to this lawsuit, a separate lawsuit was initiated in state court in Pennsylvania by the P.C.: the P.C. filed suit against Seithel in the Court of Common Pleas of Philadelphia County, Pennsylvania, on or about June 13, 2011 by writ of summons, preliminary to the filing of a Complaint, captioned Feldman & Pinto, P.C. v. Seithel, June Term 2011, No. 888 (Philadelphia C.P.) ("the Philadelphia Action"). The complaint in the Philadelphia Action was filed August 25, 2011. Also on August 25, 2011, the P.C. filed a Motion for a Preliminary and Special Injunction. The following day, August 26, 2011, Seithel removed the Philadelphia Action to the United States District Court for the Eastern District of Pennsylvania, docketed as *Feldman & Pinto P.C. v. Seithel, et al.*, Civil Action No. 11-5400 (E.D. Pa.). United States District Court Judge Juan Sanchez of the Eastern District, sitting as an emergency judge, presided over a hearing with respect to the firm's injunction motion late in the day on August 26, and entered a Temporary Restraining Order ("TRO") on August 29, 2011, enjoining and restraining Seithel from various activities related to the current dispute.

This lawsuit was filed by Lynn Seithel ("Plaintiff" or "Seithel") against the P.A. in the Court of Common Pleas of Charleston County on July 6, 2011. Defendant timely removed the action to this Court on July 29, 2011. Defendant filed a Motion to Dismiss on August 5, 2011, arguing among other things that the court lacked personal jurisdiction over the firm. On August 12, 2011, Defendants consented to an order allowing Plaintiff 30 days from August 5, 2011 to

2

respond to that motion. Then on August 24, 2011, Plaintiff filed a Motion for a TRO and Preliminary Injunction. Before ruling on the motion for a TRO or the preliminary injunction, the Court set a hearing concerning personal jurisdiction and venue.

## ANALYSIS

### I. Personal Jurisdiction:

When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). When a court addresses the issue of jurisdiction on the basis of pleadings and supporting legal memoranda without an evidentiary hearing, "the burden on the plaintiff is simply to make a prima facie showing of a jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir. 1989).[2] In deciding such a motion, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* at 676.

To validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of Fourteenth Amendment due process. *Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 317 (4th Cir. 2000). South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause.[3] *Foster v.*

---

[2] While a plaintiff must only make a prima facie showing of personal jurisdiction to defeat this motion to dismiss, the Court recognizes that "when injunctive relief is sought, a stronger showing must be made." *Catalog Marketing Services, Ltd. v. Savitch*, 1989 WL 42488, *2 (4th Cir. April 24, 1989). Although Plaintiff is seeking injunctive relief in this case, the matter currently before the Court is Defendant's motion to dismiss; therefore, the Court applies that standard. However, under either standard the result would be the same.

[3] South Carolina's long-arm statute provides that :

*Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether Defendants have "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

**(a) Minimum Contacts:**

The analytical framework for determining whether minimum contacts exist differs according to which species of personal jurisdiction—general or specific—is alleged. *See generally ESAB Group v. Centricut*, 126 F.3d 617, 623-24 (4th Cir. 1997). When a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over that defendant if it purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). However, when the cause of action does not arise out of the defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature. *Id.* at 416. In this case, Seithel contends that Defendant was engaged in "substantial" or "continuous and systematic" activities in South Carolina such as to subject

---

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:

 (1) transacting any business in this State;
 (2) contracting to supply services or things in the State;
 (3) commission of a tortious act in whole or in part in this State;
 (4) causing tortious injury or death in this State by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;
 (5) having an interest in, using, or possessing real property in this State;
 (6) contracting to insure any person, property, or risk located within this State at the time of contracting;
 (7) entry into a contract to be performed in whole or in part by either party in this State;or
 (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. CODE 36-2-803(a).

4

Defendant to general jurisdiction in this state.  However, the Court finds that Defendant's contacts are not continuous and systematic, but rather are insufficient to subject Defendant to general jurisdiction in South Carolina.

Thus, the Court needs only determine whether Defendant's contacts related to this case are sufficient to subject Defendant to specific jurisdiction in South Carolina.  A defendant has minimum contacts with a jurisdiction if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1990).  Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  In determining the existence of minimum contacts, the court is mindful that it must draw all reasonable inferences from both parties' pleadings, even if they conflict, in the Plaintiff's favor.  *See, e.g., Precept Med. Products, Inc., v. Klus,* 282 F. Supp. 2d 381, 385 (W.D.N.C. 2003) ("for the purposes of a Rule 12 (b)(2) motion, the Court will accept the Plaintiff's version of disputed facts").

According to Plaintiff, Defendant, through one of its principals, approached Plaintiff while she was working and living in South Carolina and suggested that it would be beneficial for her to become associated with the firm.  *See* Comp. at ¶ 7.  Defendant entered into an agreement with Plaintiff.  *See* Comp. at ¶ 3.  "That agreement was negotiated in Charleston, South Carolina" and the resulting contract was performed in whole or in part in the state of South Carolina.  Aff. of Lynn Seithel, Sep. 2, 2011  at ¶ 3 and Comp. at ¶ 3.   Using the internet and phone in her home on John's Island, S.C., Seithel negotiated the firm's 2010 business plan.  Aff. of Lynn Seithel, Sep. 2, 2011  at ¶ 3.  Seithel contends that this business plan created by

Laura Feldman shows that the firm intended for her to maintain an office at her home in South Carolina.  Aff. of Lynn Seithel, Sep. 2, 2011  at ¶ 3.  *See also* Comp. at ¶ 8 (alleging that Defendant "would provide the support staff needed by Plaintiff in order to conduct her practice").

Seithel alleges that prior to her association with the firm, and continuing pursuant to the agreement as illustrated by the business plan, she maintained an office located at her home on John's Island, S.C.  Aff. of Lynn Seithel, Sep. 2, 2011  at ¶ 3-4.  This office includes two rooms, a bathroom, computers, printers, files, phone lines, and court rule books.  Aff. of Lynn Seithel, Sep. 2, 2011 at ¶ 4.  During her time associated with the firm, Plaintiff claims the firm knew about and supported this office:

> . . . office equipment for the Charleston location was purchased with the credit card supplied to me by Feldman & Pinto.  None of the items purchased for this office were ever questioned by the Firm, nor did the Firm ever fail to pay for the office equipment or fail to reimburse me therefor.  At least one item, an Ipad was supplied by the firm.

Aff. of Lynn Seithel, Sep. 2, 2011  at ¶ 4.  Additionally, "materials for at least one case were expressed to me at my John's Island address."  Aff. of Lynn Seithel, Sep. 2, 2011  at ¶ 7.  In addition to her association with the firm, Seithel claims her role in securing the firm's agreement with Motley Rice additionally supports personal jurisdiction.  *See* Aff. of Lynn Seithel, Sep. 2, 2011 at ¶ 5.

Defendant's version of the facts is very different.  According to Defendant, other than the one trip to South Carolina to help Seithel negotiate her departure from Motley Rice and the firm's continuing relationship with Motley Rice, the firm had no contacts with South Carolina.  Defendant takes exception to Seithel's description of the firm's knowledge, approval, and financial support of her home office.  Specifically, Defendant claims that while employed with

6

the firm, Plaintiff spent substantial time in Pennsylvania, at a horse show in Florida, and working remotely from various locations:

> In her 18 months under Feldman & Pinto, P.C.'s employ, plaintiff Seithel travelled frequently for pleasure, spending approximately six of those months at a horse show in Florida, and the remainder of the time split between the firm's Philadelphia office, travelling to states other than South Carolina, and working remotely from unknown locations which may or may not have been in South Carolina.

Aff. of Laura Feldman in Supp. of Mot. to Dismiss or Transfer. at ¶ 7. Defendant claims Plaintiff was never authorized to maintain a home office. Defendant specifically points out that Plaintiff was asked to sit for the Pennsylvania bar exam, was admonished for listing her John's Island address on an email, and was not authorized to purchase items for any home office. *See* Aff. of Laura Feldman in Supp. of Mot. to Dismiss or Transfer at ¶ 13, 14. In fact, Defendant seeks return of the Ipad and files in the John's Island office claiming those are firm property converted by Plaintiff. Supplemental Aff. of Laura Feldman in Supp. of Mot. to Dismiss and in Opp'n to Mot. for TRO at ¶ 13.

The facts of this case are similar to this court's decision in *Motley Rice, LLC v. Baldwin & Baldwin, LLP*, 518 F. Supp. 2d 688 (2007), where this court determined that sufficient minimum contacts were present to justify exerting jurisdiction over an out-of-state law firm. In that case, Motley Rice sued Baldwin & Baldwin over a co-counsel/fee-sharing agreement. *Id.* at 690. Baldwin & Baldwin was located in Texas, as were all of the cases covered by the firms' agreement. However, Plaintiffs alleged that Baldwin and Baldwin had legal business in this state because the contract was to be performed in whole or in part in South Carolina by Motley Rice, a South Carolina firm. *Id.* at 693. Additionally, lawyers and employees from Baldwin and Baldwin had traveled to South Carolina. *Id.* Baldwin & Baldwin contested jurisdiction and

produced evidence that members of that firm had only traveled to South Carolina five times in nineteen years and asserted that the contracts were entered into in Texas. *Id.*

In both cases no lawsuits were initiated or pending in South Carolina, the principals of the out of state firm did not physically visit South Carolina with any regularity. While this case is similar to *Motley Rice*, a few important distinctions between this case and *Motley Rice* deserve attention. For example, in *Motley Rice*, the court noted that while the disputed contracts did not have any forum selection clause, a 2005 agreement concerning Vioxx litigation "contain[ed] a provision stating that any dispute concerning any aspect of the parties' association shall be resolved by private, binding arbitration and that the arbitrators shall convene in Charleston, South Carolina," *Id.* at 694, whereas in this case, no such agreement exists.

Additionally, in *Motley Rice*, Motley Rice had "initiated contact with [the out-of-state law firm] Defendant," but in this case Plaintiff alleges that the firm initiated contact with her. This difference tends to support jurisdiction, especially because Rosemary Pinto came to South Carolina and assisted Plaintiff in negotiating favorable terms surrounding her departure from Motley Rice. *See* Aff. of Laura Feldman in Supp. of Mot. to Dismiss or Transfer. at ¶ 10. In fact, that action — one of Defendant's lawyers traveling to South Carolina and helping Seithel negotiate with Motley Rice — is one of the most significant contacts Defendant had with this state. In so doing, Defendant purposefully availed itself of South Carolina's laws and protections by negotiating the departure of a South Carolina lawyer from her South Carolina law firm so that the lawyer would be available to become associated with the firm.

Additionally, in *Motley Rice*, the parties did not dispute whether Motley Rice was authorized to work, pursuant to the co-counsel/fee-sharing agreement, on cases from its South Carolina office, while in this case Defendant claims that Seithel was never authorized to set up

8

and work out of the office on John's Island. In other words, many of the contacts Seithel alleges, the firm claims she created through unauthorized actions. However, because the matter is before the Court upon a motion to dismiss, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs,* 886 F.2d at 675-76.

Therefore, although the parties have substantially different views of the facts, the Court finds that Plaintiff, through the allegations in her Complaint and subsequent affidavits, has made a prima facia showing that the Defendant's conduct and connection with South Carolina are such that the firm should have reasonably anticipated being haled into court in South Carolina.

**(b) Fair play and Substantial Justice:**

Having determined that Defendant has sufficient minimum contacts with South Carolina to allow for specific jurisdiction, the Court must next consider whether the exercise of jurisdiction in this case "comport[s] with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985). In determining whether the exercise of jurisdiction comports with 'fair play and substantial justice, the court evaluates the following factors:

> [ (1) ] the burden on the defendant, [ (2) ] the forum State's interest in adjudicating the dispute, [ (3) ] the plaintiff's interest in obtaining convenient and effective relief, [ (4) ] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [ (5) ] the shared interest of the several States in furthering fundamental substantive social policies.

*Motley Rice*, 518 F. Supp 2d at 695. (quoting *Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209*, 217 (4th Cir.2001) (quoting *Burger King*, 471 U.S. at 477)). "More generally, [the Fourth Circuit's] reasonableness analysis is designed to ensure that jurisdictional rules are not exploited in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Id.*

9

(quotations and citations omitted). Thus, for exercise of jurisdiction to be constitutionally reasonable the "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World–Wide Volkswagen*, 444 U.S. at 297).

As to the first factor, Plaintiff argues that Defendant would not be subject to any undue burden in South Carolina because of its relationship with Motley Rice and because the firm has a nationwide practice, such that its attorneys regularly travel to different jurisdictions. Plaintiff notes that because many of the depositions related to the case would occur in Pennsylvania, "[t]he only thing Defendant has to do in South Carolina is appear to attend trial." Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss or, in the Alternative to Transfer Venue at 13. Additionally, Plaintiff asserts that most of the documents are in Pennsylvania and can be managed electronically.

Defendant claims that exercising jurisdiction will substantially burden it by necessitating its numerous witnesses to travel from Pennsylvania for each hearing and remain here for days. Additionally, Defendant disagrees that this case's documents could easily be handled electronically and claims the transport of documents here is unreasonable given that a similar case is currently pending in Pennsylvania.

With regard to the second factor, Plaintiff asserts that South Carolina has an interest in adjudicating a dispute involving alleged statements libeling one of its residents, because the Plaintiff's location and the effect of the damages are both local. Defendant disagrees, claiming that the dispute arose out of Plaintiff's employment in Pennsylvania with a Pennsylvania law firm. Defendant adds that Pennsylvania has a strong interest in adjudicating the employment disputes of its business.

10

As to the third factor, Plaintiff claims she has a significant interest in obtaining convenient and effective relief, because she needs to be able to move forward with those clients she is representing in various pharmaceutical cases. Additionally, Plaintiff notes that her clients' interests are at stake. In response, Defendant notes that the most efficient way to resolve the dispute is to grant its motion to dismiss or in the alternative to transfer, because the dispute is already being litigated in Pennsylvania.

Plaintiff argues, with regard to the fourth and fifth factors, that the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several States in furthering fundamental substantive social policies favors South Carolina, because the contract was performed in South Carolina, the damages of the libel occurred in South Carolina, and this action is likely to be governed by South Carolina law. Again in response, Defendant highlights the pending litigation in Pennsylvania and argues that maintaining two similar cases in different jurisdictions does not further the interstate judicial system's interest in obtaining the most efficient resolution of controversies or the shared interest of the several States in furthering fundamental substantive social policies.

The Court agrees with Plaintiff that the exercise of jurisdiction in this case comports with fair play and substantial justice because the factors weigh in favor of jurisdiction. As to the first factor, the Court finds that any burden on the defendant is reasonable. Defendant may be forced to travel for multiple hearings were the case to proceed in South Carolina, but traveling to a different state several times is a minimal burden that is unavoidable and one of the parties must shoulder that burden. Additionally, technology should allow the transportation of documents in this case to be done efficiently without shipping the documents to this state.

With regard to the second factor, Plaintiff is correct that South Carolina has an interest in adjudicating disputes involving harm to one of its residence when the person resides in South Carolina and the damage is felt locally. Likewise, Defendant is correct that Pennsylvania has an interest in adjudicating employment disputes involving its businesses and arising out of employment agreements in that state. South Carolina's interest is substantial and Pennsylvania's interest, while important, is not so substantial as to make the exercise of jurisdiction in South Carolina constitutionally unreasonable.

Defendant's argument as to the remaining factors highlights that the most convenient, efficient way for either party to obtain effective relief is substantially impacted by the pendency of the Philadelphia Action. Each of these arguments is more persuasive as to Defendant's Motion to Transfer. The Court agrees with Plaintiff's argument that South Carolina can conveniently and efficiently provide her with effective relief. Therefore, the exercise of jurisdiction in this case comports with fair play and substantial justice.

## II.     Duplicative Action/Motion to Transfer Venue under 28 U.S.C. § 1404(a):

Having determined that jurisdiction is appropriate, the Court addresses whether the action should proceed in this court or be transferred to the United States District Court for the Eastern District of Pennsylvania. "Generally, a federal suit may be dismissed "for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court." *Motley Rice*, 518 F. Supp. 2d at 697. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Nexsen Pruet, LLC, v. Westport Ins. Corp.*, 2010 WL 3169378 (D.S.C. Aug. 5, 2010)(quoting *New Beckly Min. Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991). In this case,

the Court is faced with litigation that parallels litigation in the Eastern District Court Pennsylvania.

In the Philadelphia Action, the P.C. sued Seithel, here she sued the P.A. As they relate to this case, the P.A. and P.C. are substantially the same — both are entities the parties contend may have been the entity with which Seithel was associated. Additionally, the issues being litigated are substantially the same; all of the claims arise out of Seithel's association with the firm and the fallout from the end of that relationship. Seithel contends that her claims here are distinct as her complaint alleges libel, a distinct tort unrelated to any employment or partnership dispute. However, the substance of the libel claim, as well as any defenses the firm may assert, are related to the employment or partnership dispute and several causes of action in the Philadelphia Action. In other words, Seithel's libel claim is duplicative because her libel claim alleges that the firm libeled her by publishing to third parties statements impugning her reputation and the firm's claims — for fraud and misrepresentation, conversion, unjust enrichment/constructive trust, and breach of duty of loyalty — relate to the substance of her comments and may be the basis of defenses to the libel claim that the firm might assert. Additionally, Seithel's other causes of action — accounting, breach of contract, and injunctive relief — all substantially parallel the firm's claims in the Philadelphia Action for breach of contract and fraud and misrepresentation. In order to find that the litigation is duplicative, the Court need to not find that the complaints are mirror images of each other: "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* This case and the Philadelphia Action involve substantially the same parties litigating substantially the same issues.

13

When actions are duplicative, "[t]he Fourth Circuit recognizes the 'first-filed' rule, which gives priority to the first suit filed absent a balance of convenience favoring the second filed." *Id.* (citing *Ellicott Mach. Corp. v. Modern Welding Co., Inc.,* 502 F.2d 178, 180 n. 2, 181 (4th Cir. 1974). In this case, the summons in the Philadelphia Action was filed first, then the summons and complaint in this action. Subsequent to the summons and complaint in this action, the complaint in the Philadelphia Action was filed. The procedure of filing a summons before a complaint in Pennsylvania state courts presents a unique question as to whether that filing is sufficient to give that action "first to file" status. In *Med-Tec Iowa, Inc. v. Nomos Corp.*, 76 F. Supp. 2d 962, 968-970 (N.D. Iowa 1999), the court addressed the issue and held that Pennsylvania's state court procedure allowing a plaintiff to commence an action with a praecipe for a writ of summons commenced the action for purposes of first-filed status. The Court agrees with the reasoning of the District Court in *Med-Tec Iowa* and finds that the Philadelphia Action was commenced on June 13, 2011 when the P.C. filed suit against Seithel in the Court of Common Pleas of Philadelphia County, Pennsylvania, by writ of summons, preliminary to the filing of a Complaint. *See id.* (holding that filing a praecipe for a writ of summons pursuant to Pennsylvania's state court procedure commenced the action for purposes of first-filed status; rejecting the argument that the "first-filed rule should be restricted to those initial pleadings which provide defendants with notice of the plaintiff's claims and allow for a responsive pleading or motion to be filed;" and rejecting the argument that "permitting the filing of a praecipe for writ of summons to constitute the initial filing for purposes of the first-filed rule gives an unfair advantage to the residents of Pennsylvania").

Nothing in the record suggests that a balance of convenience favors the second filed. Therefore, the Court finds that the cases are duplicative, the Philadelphia Action was first-filed,

and no balance of convenience favors the second action filed. While this case is duplicative, the Court finds that the better alternative to dismissing the action is to transfer the action to the United States District Court for the Eastern District of Pennsylvania.

### III.     Amended Complaint:

At the hearing on September 1, 2011, Plaintiff represented that suit was brought against the P.A. because Plaintiff was unaware of the P.C. or the LLC. At that time Plaintiff made an oral motion for leave to amend the Complaint. Given the confusion admitted to by Laura Feldman in her Supplemental Affidavit as to which of her firm's legal entities is the correct defendant, it serves the interest of justice to grant Plaintiff leave to amend.

### CONCLUSION

Therefore, it is **ORDERED**, for the forgoing reasons, that Defendant's Motion to Dismiss is **DENIED**. It is further **ORDERED** that Plaintiff has 15 days from the date of this Order to file an Amended Complaint. It is further **ORDERED** that this case be transferred to the United States District Court for the Eastern District of Pennsylvania.

PATRICK MICHAEL DUFFY
United States District Judge

**September 7, 2011**
**Charleston, SC**

15